## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **MICHAEL W. GRAGG,** | ) | |
| **TRACEY M. GRAGG,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 14-3315** |
| | ) | |
| **ITT TECHNICAL INSTITUTE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendant ITT Technical Institute's Motion to Dismiss or in the Alternative to Stay this Action and Compel Arbitration (d/e 34). Defendant's Motion is GRANTED. Because the Enrollment Agreement signed by Plaintiff Michael Gragg contained a binding arbitration provision applying to all issues arising out of the Enrollment Agreement and all issues concerning the enforceability of the arbitration provision, Defendant's Motion is GRANTED as to Plaintiff Michael Gragg. Plaintiff Michael Gragg's Rehabilitation Act claims and any contract defenses raised fall

under the jurisdiction of the arbitrator.

On the other hand, Plaintiffs' claim that Tracey Gragg never formed a valid contract with Defendant ITT Technical Institute because she did not have the capacity to contract at the time she signed the Enrollment Agreement falls under the jurisdiction of this Court. However, the Court finds that the Enrollment Agreement is valid. Although Tracey Gragg did not have the capacity to enter into a contract at the time she signed the Enrollment Agreement, under Illinois law, a formerly incompetent person has the ability to ratify a previously void contract after the restoration of his or her capacity. Because Tracey Gragg ratified the Enrollment Agreement after the restoration of her competence, Defendant's motion is GRANTED as to Tracey Gragg.

## I.   <u>BACKGROUND</u>

Plaintiff Michael Gragg, originally filed this pro se lawsuit against several employees of the Defendant, ITT Technical Institute ("ITT Tech"), under section 504 of the Rehabilitation Act. *See* Compl. (d/e 1). Michael Gragg has poor vision due to left monocular blindness with a corneal implant and right retinal

detachment.  *See id.*  Michael Gragg  alleged that ITT Tech failed to accommodate his disability when he took classes at ITT Tech.  *See id.*  Michael Gragg specifically alleged that ITT Tech did not provide him the proper computer software; that ITT Tech did not provide him with proper tutors and aids to read and explain things to him; that, when he complained about not being properly accommodated, teachers at ITT Tech harassed him and gave him undeservedly poor grades; and that ITT Tech threatened to expel him in retaliation for his complaints.  The Court granted those defendants' motions to dismiss the Michael Gragg's claims on the grounds that those defendants could not be held individually liable under Section 504 of the Rehabilitation Act.  *See* Opinion (d/e 26).  The Court then allowed the Graggs to file an amended complaint against ITT Tech.

The Graggs filed that amended complaint on March 27, 2015.  *See* Amended Compl. (d/e 27).  The amended complaint added Plaintiff Tracey Gragg as a plaintiff.  In the amended complaint, the Graggs reallege Michael Gragg's allegations from the original complaint and add several new allegations.  *See id.*  The Graggs allege that ITT Tech did not accommodate Tracey Gragg, who

suffers from bipolar disorder and cognitive disorder (a learning disability), causing her to fail classes. The Graggs further allege that ITT Tech discriminated against Tracey Gragg, a disabled person, by expelling her from ITT Tech for failing two classes, while allowing other students to stay at the school when they failed as many as seven classes. *See id.* Finally, the Gragg's allege that ITT Tech retaliated against the Graggs after the Graggs complained about ITT Tech's violations by convincing Robert Morris University not to enroll the Graggs. *See id.*

On June 8, 2015, ITT Tech filed its Motion to Dismiss the Graggs' amended complaint on the grounds that the contracts the Plaintiffs entered into with ITT Tech contained a binding arbitration agreement. *See* Mot. to Dismiss (d/e 34). On that same date, the Graggs filed a Motion for Summary Judgment (d/e 36), consisting of a recitation of facts and a request that judgment be entered in their favor based on their mistaken belief that ITT Tech had not responded to the Graggs' complaint. The Graggs filed an Amended Motion for Summary Judgment (d/e 37) the next day, consisting of the same motion as their first Motion for Summary Judgment, but

it was this time accompanied by documents related to a prior lawsuit that the Graggs had filed and documents related to the Graggs' medical conditions.

For the first time, in Plaintiffs' Amended Motion for Summary Judgment, and again in their response to Defendant's Motion to Dismiss, the Graggs argue that their respective contracts to enroll at ITT Tech and/or the arbitration agreement within those contracts are not valid. *See* (d/e 37, 40). The Graggs allege that Tracey Gragg had a court-appointed guardian at the time she signed her contract with ITT Tech. Further, the Graggs allege that Tracey Gragg's guardian was not present when the contract was signed nor was the guardian aware that the contract was signed.

According to Tracey Gragg's Disabled Adult Case in Sangamon County, Michael Gragg was Tracey Gragg's court-appointed guardian from November 4, 2002 until March 21, 2013. *See* Docket Sheet, *In re Tracey Gragg*, Sangamon County Circuit Court Case No. 2002-P-000648. On March 21, 2013, Michael Gragg's guardianship was revoked and Kevin McDermott was appointed Tracey Gragg's new guardian. *Id.* On November 1, 2014, Tracey Gragg filed a

petition to revoke Kevin McDermott's guardianship.  *Id.*  The petition was granted on December 23, 2014 and Tracey Gragg's competence was judicially restored.  *Id.*

The Graggs further argue that Michael Gragg signed the contract but was unable to enter into an agreement because of physical limitations, including injury and blindness, that the Graggs signed their contracts under duress, that the Graggs signed their contracts under undue influence from ITT Tech, and that ITT Tech misrepresented the contract or parts of the contract to the Graggs.

As a result of the Graggs' allegations regarding Tracey Gragg's competence, the Court ordered ITT Tech to file a reply addressing the issue of whether the contracts were valid and enforceable.  *See* July 1, 2015 Text Order.  ITT Tech filed its reply on July 17, 2015 (d/e 44).  ITT Tech's reply included an affidavit from Jason Thoron, Director of ITT Tech's Springfield campus, in which Thoron averred that Michael Gragg was present when Tracey Gragg signed ITT Tech Enrollment Agreements on March 5, 2012 and June 6, 2012.  *See* Exh. 1 to Reply (d/e 44-1).  The Graggs submitted several filings

after ITT Tech's Reply.  The Court advised the Graggs that the Court would consider the Graggs filings, including their two motions for summary judgment, as responses to the Defendant's Motion to Dismiss.

In one of the responses, filed by the Graggs on October 19, 2015, the Graggs allege that Tracey Gragg attended ITT Tech on, at least, two separate occasions.  *See* Mot. for Order (d/e 52) at 1.  The Graggs further clarified that their allegations in the present case pertain only to Tracey Gragg's most recent enrollment into ITT Tech, in 2014, because a two-year statute of limitations on Rehabilitation Act claims prohibits the inclusion of any claims related to Tracey Gragg's prior enrollment at ITT Tech, in 2012.  *See id.*

Defendant's Motion to Dismiss (d/e 34) is now GRANTED.

## II.   **LEGAL STANDARD**

"[A] motion to dismiss based on a contractual arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)."  *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011).  When ruling on a motion to dismiss for improper venue, the Court "must accept

all well-pleaded facts as true unless controverted by the Defendant's affidavits." *Hanson Engineers Inc. v. UNECO, Inc.*, 64 F.Supp.2d 797, 799 (C.D. Ill. 2013).  "When ruling on a motion to dismiss for improper venue, the district court is not obligated to limit its consideration to the pleadings or to convert the motion to one for summary judgment if the parties submit evidence outside the pleadings.  *Faulkenberg*, 637 F.3d at 809-10.  "Any factual disputes must be resolved in favor of the plaintiff."  *Hanson Engineers*, 64 F.Supp.2d at 799.

## III.  **ANALYSIS**

When the Graggs enrolled at ITT Tech, they both signed an Enrollment Agreement that listed the rights and obligations of the parties.  In fact, the Graggs both signed multiple enrollment agreements. [1]  Michael Gragg signed enrollment agreements on March 21, 2012 and June 6, 2012.  Tracey Gragg signed two enrollment agreements in 2012, on March 5th and June 6th, and signed another agreement on September 2, 2014.  *See* Exh. 1-A, 1-

---

[1] The Graggs both also signed subsequent addenda and agreements, which reincorporated all the terms of the Enrollment Agreement, including the arbitration provision.  However, the additional documents did not amend any pertinent terms and none of the documents were signed after Tracey Gragg was adjudged competent; therefore the documents do not affect the analysis.  *See, e.g.,* Exh. 1-D and 1-H to Reply (d/e 44-5, 44-9).

B, 1-C, 1-E, and 1-F to Reply, (d/e 44-2, 44-3, 44-4, 44-6, 44-7).

Tracey Gragg signed the September 2, 2014 agreement because she

left ITT Tech sometime after her 2012 enrollment and re-enrolled in

the school in 2014.  *See* Mot. for Order (d/e 52) at 1.

 The Enrollment Agreement states that "[t]he terms and

provisions of this Agreement govern Student's enrollment in the

Program."  *See* Exh. A(1) to Mot. to Dismiss, (d/e 35-1) at 1.  The

Enrollment Agreement also contains an arbitration clause that

subjects all disputes to arbitration.  *Id.* at 8.  Paragraph 19 is

entitled "Resolution of Disputes" and begins by stating, "The

following procedure applies to the resolution of any dispute arising

out of or in any way related to this Agreement…."  *Id.*  The section

includes bold writing that reads, "**If the Dispute is not resolved**

**pursuant to the School's Student Complaint/Grievance**

**Procedure or through other informal means, then the Dispute**

**will be resolved by binding arbitration between the parties.**"

Further, just a few paragraphs prior to the student signature

section is Paragraph 24, entitled "Notice to Buyer."  *Id.* at 19.

Paragraph 24 contains five subsections, all in bold print, two of

which are relevant here.  Subsection (a) reads, "**Do not sign this Agreement before you read it or if it contains blank spaces.**"  *Id.*  Then, subsection (e) reads, in all capital letters, "**THIS AGREEMENT REQURIES BINDING ARBITRATION OF DISPUTES.**"

## A. Paragraph 19 of the Enrollment Agreement Subjects the Graggs' Rehabilitation Act Claims to Binding Arbitration.

Generally, a court must "rigorously enforce arbitration agreements according to their terms."  *American Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013).  Where a contract contains an arbitration clause, there is a presumption that claims related to that contract are subject to the arbitration clause.  *See AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).  This presumption of arbitrability applies equally to "claim[s] founded on statutory rights."  *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  In determining whether a dispute falls under an arbitration agreement, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration."  *Volt Info. Sciences, Inc. v. Bd. of*

*Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989);

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

The Graggs' Rehabilitation Act claims clearly fall under the arbitration clause.  The clause applies to "any dispute arising out of or in any way related to" the agreement the Graggs signed to enroll at ITT Tech.  See Exh. A(1) to Mot. to Dismiss, (d/e 35-1) at 18.  The Graggs claim that, during their enrollment at ITT Tech, the college did not appropriately accommodate the Graggs, who are disabled.  This claim arises from the services provided by ITT Tech to the Graggs as a part of the Graggs' enrollment and, therefore, arises from the Enrollment Agreement.  Further, the Graggs claim that, after they complained about ITT Tech failing to accommodate them, ITT Tech retaliated against the Graggs.  This claim is related to the Enrollment Agreement because the alleged retaliation resulted from the Graggs complaining about ITT Tech's contractual performance in providing educational services.

Further, the fact that the Graggs' claims are based on a

statutory right does not bring the claims outside the scope of the arbitration clause.  *See Pickens v. ITT Educ. Servs., Inc.*, No. 4:12-CV-1196, 2012 WL 5198332, at \*6 (S.D. Tex. Oct. 19, 2012) (enforcing the same ITT Tech arbitration provision at issue in this case against a plaintiff's § 1981 claims); *Marshall v. ITT Technical Inst.*, No. 3:11-CV-552, 2012 WL 1565453, at \*5 (E.D. Tenn. May 1, 2012) (enforcing the same ITT Tech arbitration provision against a plaintiff's state Consumer Protection Act claims.).  Therefore, the Graggs' Rehabilitation Act claims are subject to the Enrollment Agreement's binding arbitration clause, making this an improper venue for the Graggs' Rehabilitation Act claims.  *See Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014) (noting that "[a]n agreement to arbitrate is a type of forum selection clause," which could result in dismissal for improper venue).

### B. <u>The Arbitrability of the Graggs' State Law Challenges to the Enrollment Agreement Is Subject to the Federal Arbitration Act.</u>

In the Graggs' various filings, they challenge the enforceability of the arbitration provision within the Enrollment Agreement on several grounds: (1) that the Enrollment Agreement is not valid

because the Graggs signed it under duress and undue influence; (2)
that ITT Tech misrepresented the Enrollment Agreement or parts of
the agreement to the Graggs; (3) that the Enrollment Agreement is
not valid as to Michael Gragg because he is blind and was suffering
from blunt-force trauma and the agreement was not read to him; (4)
that the arbitration provision is not enforceable because it is
unconscionable; and (5) that the Enrollment Agreement is void as to
Tracey Gragg because she had a court-appointed guardian and
therefore did not have the capacity to enter the agreement.  ITT
Tech argues that all such challenges are also subject to arbitration.

Unlike the Graggs' Federal Rehabilitation Act claims, the
Graggs' challenges to the arbitration provision are state law
challenges.  However, questions of arbitrability of state law claims
still fall under the Federal Arbitration Act.  *See Preston v. Ferrer*,
552 U.S. 346, 349-50 (2008) ("[W]hen parties agree to arbitrate all
questions arising under a contract, state law primary jurisdiction in
another forum...are superseded by the FAA.").

In *Buckeye v. Cardegna*, 456 U.S. 440 (2006), the Supreme
Court effectively divided challenges to arbitration agreements into

three categories.  The Court distinguished between challenges to the validity of the agreement as a whole and challenges to the enforceability of the agreement to arbitrate.  *See id.* at 446.  The Court further noted that its holding regarding challenges to the validity of a contract as a whole applied to all challenges to the whole contract's validity, except challenges to the existence of an agreement at all.  *Buckeye*, 546 U.S. at 444, n. 1.  Therefore, courts shall consider a challenge to an arbitration agreement as either: (1) a challenge that is specific to the enforceability of the arbitration agreement within the contract; (2) a challenge to the validity of the whole contract; or (3) a claim that a contract was never formed.  The Graggs make challenges that fit each of the three categories.

### 1.   The Graggs' Challenges to the Enforceability of the Arbitration Provision Are Subject to Binding Arbitration.

The Graggs make one challenge that is clearly specific to the arbitration clause: that the clause is unconscionable.  Generally, if the challenge is to the "making of the agreement to arbitrate," rather than to the whole contract, then the federal court has jurisdiction to consider the claim.  *Id.* at 445 (citing *Prima Paint*

Page 14 of 33

*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). However, the Supreme Court has subsequently held that parties can agree to arbitrate "gateway" issues, such as whether the arbitration clause is enforceable.  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010) (holding that arbitration agreements that included arbitration of "gateway" issues of enforceability were valid); *see also, Johnson v. Western & Southern Life Ins. Co.*, 598 Fed.Appx 454 (7th Cir. 2015) (claim of unconscionability is for the arbitrator unless the plaintiff specifically challenges the provision of the arbitration agreement subjecting the gateway question of enforceability to arbitration). The Seventh Circuit has since specifically held that parties are permitted to agree to arbitrate such gateway issues in the case of college enrollment agreements. *See Grasty*, 599 F.Appx. at 598 ("[W]e must enforce the parties' agreement to arbitrate gateway questions about the arbitrability of claims and the scope of the arbitration agreement.") (internal quotations omitted).

As per the Enrollment Agreement, the arbitration provision in this case clearly governs challenges to its own enforceability.  *See*

Def. Reply (d/e 44-2) at 5.  Paragraph 19, provision (b)(4) states,

"The arbitrator will have the exclusive authority to determine and

adjudicate any challenge to the enforceability of this Resolution of

Disputes Section."  *Id.*  Therefore, because the arbitration clause

specifically governs challenges to its own enforceability,[2] the Graggs'

unconscionability claim is subject to arbitration.

### 2. The Gragg's Challenges to the Validity of the Contract as a Whole Are Subject to Binding Arbitration

The Graggs raise several challenges to the validity of the

Enrollment Agreement as a whole.  The Graggs claim that the

contract is not valid because they were under duress and they were

unduly influenced. The Graggs further claim that the contract is not

valid as to Michael Gragg, individually, because he did not

understand the contract because of alleged blindness and injury

and the contract was not read to him.

All of the above claims challenge the validity of the contract as

a whole.  Any duress or undue influence, as well as Michael Graggs'

---

[2] The Graggs claim that ITT Tech made misrepresentations about the content of the contract.  The Graggs' filings do not specify the substance of the alleged misrepresentations.  However, if the alleged misrepresentations specifically concerned the arbitration agreement, the above analysis would similarly apply and such a claim would be subject to arbitration.

alleged lack of knowledge of the contract's content applies equally to every provision in the contract. The arbitration clause is contained within the same signed document as the rest of the Enrollment Agreement. The Graggs do not allege that circumstances were different while they were reading some parts of the contract as compared to others. Further, these claims do not challenge the existence of the agreement, only the agreement's validity.

As opposed to challenges to the enforceability of the arbitration agreement, the Supreme Court has stated that questions regarding the validity of the contract as a whole always fall under the jurisdiction of the arbitrator. *Preston*, 552 U.S. at 349 (citing *Buckeye*, 546 U.S. 440) ("[W]hen parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court."). Therefore, under *Buckeye*, the above claims[3] are subject to

---

3 As noted *supra* section B.2., the Graggs also claim that ITT Tech made misrepresentations to the Graggs. If the Graggs intend to allege that the misrepresentations concerned the whole contract rather than only the arbitration provision, the challenge would still be subject to arbitration for the same reasons noted here.

arbitration.

### 3.   The Graggs' Claim That a Contract Was Never Formed Between Tracey Gragg and ITT Tech Falls Under the Jurisdiction of This Court.

Lastly, the Graggs claim that the arbitration clause is unenforceable as to Tracey Gragg because she lacked the mental capacity to enter into a contract at the time that she signed the Enrollment Agreement.  In *Buckeye*, the Supreme Court clarified in a footnote that its opinion only addressed the issue of a contract's validity and left open whether an issue of "capacity to consent" was subject to arbitration.  546 U.S. at 444, n. 1.  The Seventh Circuit answered that question in *Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2010).  The Seventh Circuit held that *courts* must decide whether a contract existed at all prior to ordering arbitration. *See id.* at 738 ("[T]he existence of a contract is an issue that the Courts must decide prior to staying an action and ordering arbitration.").

The Graggs allege that Tracey Gragg did not have the mental capacity to enter into the Enrollment Agreement because, at the time she signed the agreement, Tracey Gragg was under the

supervision of a court-appointed guardian.  The Graggs further allege that Tracey Gragg's guardian did not sign the document, was not present when the document was signed, and was not aware the document was signed.  Under 755 ILCS 5/11a-22, a contract "by any person for whom a plenary guardian has been appointed…is void as against that person."

ITT Tech argues that the Graggs' capacity argument still falls under the jurisdiction of the arbitrator and not this Court because Tracey Graggs' alleged lack of capacity renders the agreement "voidable," not "void."  Reply (d/e 44) at 2.  Based on this voidable/void distinction, ITT Tech argues that "[t]he Graggs do not contend that the Agreements were never formed."  *Id.* at 7

However, the Graggs' allegation that Tracey Gragg did not have the capacity to form a contract is a contention that no agreement was ever formed.  *Buckeye*, 546 U.S. at 444, n. 1. ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and oblige was ever concluded.  Our opinion today addresses only the former, and does not speak to…whether the signor lacked the mental capacity to assent.").  If

Tracey Gragg had a court-appointed guardian at the time, under Illinois law, she did not have the capacity to enter into a contract. *See In re Rankin's Estate*, 53 N.E.2d 747, 748 (Ill.App.3d 1944) ("From the time a person is adjudged to be distracted and incapable of caring for his property and effects, until, if ever, he is adjudged to be restored, he has no more legal power to act for himself than if he were dead and that a contract made, or release or receipt given by him has no legal significance.").

Further, although other circuits have used a "void or voidable" analysis in determining arbitrability, the Seventh Circuit has never abided by such an analysis.  *See Wilhelm v. A.G. Edwards & Sons, Inc.*, 2002 WL 1377568, at 3-4 (N.D. Ill. 2002) (distinguishing the Seventh Circuit approach from the "void/voidable distinction" used in the Second, Third, and Ninth Circuits).  Because a capacity-to-contract challenge goes to "the existence of a contract," the guardian issue, therefore, falls under the jurisdiction of this Court. *See Janiga*, 615 F.3d at 738.

ITT Tech argues that this Court should follow the Illinois Third District Appellate Court in *LRN Holding, Inc. v. Windlake Capital*

*Advisors, LLC*, 949 N.E. 2d 264 (Ill.App. 3d 2011). In *LRN Holding*, the court held that the plaintiff's claim that the entire contract was "void ab initio" because the contract violated the Illinois Brokers Act fell under the jurisdiction of the arbitrator. 949 N.E. 2d at 267-269. ITT Tech argues that this Court should follow the *LRN Holding* because (1) the Graggs' also argue that the contract is void under a statute, and (2) *LRN Holding* "cit[es] extensively to the *Buckeye* decision." Reply (d/e 44) at 8.

The Court must follow Illinois law on the foundational contract law issues in this case. However, as this Court has stated, the issue of arbitrability, even of state claims, is subject to the FAA. *See Preston v. Ferrer*, 552 U.S. 346, 349-50 (2008). Because interpretation of the FAA is an issue of federal law, this Court must follow federal precedent. Therefore, decisions of the Illinois state courts on the issue of arbitrability are merely persuasive in the absence of a binding federal decision. *See Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*, 42 F.Supp.2d 821, 829 (N.D. Ill. 1999) ("State-court precedent is binding upon a federal court sitting in diversity with respect to state-law issues; however, state-court

precedent is only persuasive authority with respect to issues of federal law.")  Here, the Seventh Circuit has specifically spoken on the issue.  The Graggs' claim that Tracey Gragg did not have the capacity to enter a contract speaks directly to the "existence of a contract."  *Janiga*, 615 F.3d at 738.  Therefore, the issue is under the jurisdiction of this Court and must be resolved in order to determine whether Tracey Gragg's claims are subject to arbitration. *See id.*

### C. __The Enrollment Agreement Between Tracey Gragg and ITT Tech is a Valid Contract.__

However, to resolve the issue of whether Tracey Gragg and ITT Tech formed a valid contract, this Court follows Illinois law.  The Graggs argue that Tracey Gragg never came to a valid agreement with ITT Tech because her court-appointed guardian, Kevin McDermott, was not involved in the formation of the contract and was not aware of Tracey Gragg's enrollment into ITT Tech.  *See* Amended Mot.  Summ.J. (d/e 37) at 2.  ITT Tech argues that the Enrollment Agreement is valid because, in 2012, Michael Gragg was Tracey Gragg's court-appointed guardian and he was present when

Tracey Gragg signed the first two agreements, on March 5, 2012 and June 6, 2012, or alternatively because Michael permitted Tracey to sign those agreements.  *See* Reply (d/e 44) at 6-7.

ITT Tech submitted an affidavit from Jason Thoron, Director of ITT Tech, in which Thoron avers that he was present when Tracey Gragg signed the March 5th and June 6th agreements and that Michael Gragg was present with her on both occasions.  *See* Exh. 1 to Reply (d/e 44-1).  However, the Graggs argued in a later responsive filing that the two agreements that Tracey signed when Michael Gragg was her guardian are not relevant to this case.  *See* Mot. for Order (d/e 52) at 1.  The Graggs allege in the filing that Tracey Gragg ended her first enrollment at ITT Tech and then enrolled again in 2014.  *See id.*  Further, the Graggs state that, because a two-year statute of limitations on Rehabilitation Act claims prohibits Tracey Gragg from making a claim based on her 2012 enrollment, only the September 2, 2014 Enrollment Agreement is relevant to this case.  *See id.*

Although in a motion to dismiss for improper venue, the Court is "not obligated to limit its consideration to the pleadings," the

Court still "must accept all well-pleaded facts as true unless controverted by the Defendant's affidavits" and resolve "factual disputes" in favor of the plaintiff.  *See Faulkenberg*, 637 F.3d at 809-10 (holding that district courts may consider information from outside the pleadings when ruling on a 12(b)(3) motion without having to convert the motion to "one for summary judgment"); *compare Hanson Engineers*, 64 F.Supp.2d at 799 (maintaining that factual disputes in motions to dismiss under 12(b)(3) are resolved in favor of the plaintiff).  Therefore, in deciding ITT Tech's motion to dismiss, this Court must take the Graggs' allegations as true and analyze the issue of whether the Enrollment Agreement is valid by looking only to the September 2, 2014 agreement.

Even considering only the September 2, 2014 Enrollment Agreement, this Court finds that the agreement is valid.  On September 2, 2014, Kevin McDermott was Tracey Gragg's court-appointed guardian.  The Graggs allege that McDermott was not aware of Tracey Gragg signing the Enrollment Agreement or attending ITT Tech until a December 23, 2014 hearing regarding Tracey Gragg's motion to revoke Kevin McDermott's guardianship.

*See* Mot. for Order (d/e 52) at 1.  As noted above, 755 ILCS 5/11a-22 provides that a contract "by any person for whom a plenary guardian has been appointed...is void as against that person." Therefore, under the statue, the Enrollment Agreement was not valid when Tracey Gragg signed it on September 2, 2014.

However, the statute further states that "a person making a contract with the person so adjudged is bound thereby."  *Id.*  This clause allows the incompetent party to enforce the contract against the competent party.  In Illinois, when, despite a legal flaw in the negotiation of the contract that prejudices one of the parties, the prejudiced party can still enforce the contract against the unprejudiced party, the contract is "voidable."  *See Citicorp Sav. of Illinois v. Stewart Title Guar. Co.*, 840 F.3d 526, 529 (7th Cir. 1988) ("In lawyer's parlance, the contract is "voidable.").  Alternatively, if the legal flaw renders the contract unenforceable by either party, the contract is "void."  *See id.*  In this case, even though the contract between Tracey Gragg and ITT Tech was initially invalid as to Tracey Gragg, under 755 ILCS 5/11a-22, Tracey Gragg or her guardian still had the power to enforce the contract against ITT

Tech.  Therefore, the contract was "voidable," not "void."

Although, this void/voidable distinction did not apply in interpreting arbitrability under the FAA, the Illinois law distinction is relevant to determine whether a contract is valid under Illinois contract law.  *See Citicorp*, 840 F.3d at 529. The significance of a contract being voidable rather than void is that the contract can be ratified.  *See Kedzie v. 103rd Currency Exchange, Inc.*, 601 N.E.2d 803, 807 (Ill.App.4d 1992) ("The difference between a contract that is void...and one that is merely voidable is that a voidable contract can be ratified...while the void contract cannot be.") (internal quotations omitted).   Under 755 ILCS 5/11a-22, when Tracey Gragg entered into the Enrollment Agreement completely independent of her guardian, Tracey Gragg was not bound by the agreement while she remained adjudged incompetent.  However, upon the restoration of a previously incompetent person's capacity, he or she can ratify a previously voidable contract.  *See Brandt v. Phipps*, 75 N.E. 2d (Ill. 1947) ("Plaintiff's [contract], executed while he was mentally incompetent, was voidable.  Upon regaining his sanity, plaintiff could elect to either ratify or disaffirm his contract.")

(internal citation omitted).  Therefore, the Enrollment Agreement is still valid if Tracey Gragg effectively ratified the contract after her competence was restored.

"Ratification, to be binding, need not be express, but may result from words, acts and deeds, and thus be implied in fact." *Brandt*, 75 N.E.2d at 766; *see also My Pie Intern., Inc. v. Debould, Inc.*, 687 F.2d 919, 934 (7th Cir. 1982).  Disaffirmance may also be express or implied.  *See Brandt*, 75 N.E.2d at 766.  "Where the contract is fully executed, however, disaffirmance is limited to an express demand that the consideration parted with be returned." *Id.*  "Furthermore, the disaffirmance must, in any event, be made within a reasonable time after the mental disability has been removed." *Id.*

Considering the actions taken by Tracey Gragg since her restoration of competence, this Court finds that Tracey Gragg ratified her Enrollment Agreement with ITT Tech.  Tracey Gragg filed a petition to revoke the guardianship of Kevin McDermott and restore her own competence on November 1, 2014, thereby attesting that she was a competent individual as of that date.  *See* Docket

Sheet, *In re Tracey Gragg*, Sangamon County Circuit Court Case No.
2002-P-000648.  At that time, she was still attending classes at ITT
Tech, thus continuing to benefit from ITT Tech's contractual
performance.  *See Seward v. B.O.C. Div. of General Motors Corp.*,
805 F.Supp. 623, 630 (N.D.Ill. 1992) (If a party "retains the
consideration after learning that the [contract] is voidable, her
continued retention of benefits constitutes a ratification...."); *Grot v.
First Bank of Schaumburg*, 684 N.E.2d 1016, 1020 (Ill.App. 1997)
("A party that accepts the benefits of an agreement is estopped from
denying its existence....").   Six days after Tracey filed her petition to
restore her competence, the Graggs filed an amended complaint
alleging that ITT Tech did not accommodate Tracey Gragg.  *See*
Second Amended Complaint (d/e 9).  Tracey was officially added to
the lawsuit by this Court's text order on December 2, 2014.

Tracey Gragg's petition was granted on December 23, 2014,
officially restoring her competence.  *See* Docket Sheet, *In re Tracey
Gragg*, Sangamon County Circuit Court Case No. 2002-P-000648.
On January 5, 2015, Tracey Gragg continued to litigate this case,
filing a response to ITT Tech's December 22, 2014 Motion to

Dismiss.  *See* Response (d/e 24).  The Graggs, to date, continue to

allege that ITT Tech failed to accommodate their disabilities,

allegations based on the performance of the same contract they now

argue is invalid.  Tracey Gragg's pursuit of a claim that stems from

ITT Tech's performance under the Enrollment Agreement implies

ratification of the contract.  *See  Brandt*, 75 N.E.2d at 766

("Ratification, to be binding, need not be express, but may result

from words, acts and deeds, and thus be implied in fact."); *see also*

*Lydon v. Eagle Food Centers, Inc.*, 696 N.E.2d 1211, 1216

(Ill.App.3d 1998) ("A principal can ratify an action by taking a

position inconsistent with nonaffirmation of the action.") (internal

quotations omitted).

This Court could only identify one state, which has ruled on

this issue in the incompetence context.  In *Bunn v. Postell*, the

Supreme Court of Georgia held that filing a pleading in a suit

regarding a voidable contract without raising the voidability defense

of the contract as a defense, constituted an action that implied

ratification of such contract.  33 S.E. 707 (Ga. 1899).  Further,

Illinois courts have plainly stated in other contexts that an action to

enforce proper performance of a voidable contract constitutes ratification.  *See, e.g. Athanas v. City of Lake Forest*, 657 N.E.2d 1031, 1038 (Ill.App.2d 1995) ("A principal who institutes an action to enforce a contract made by an agent without proper authority is deemed to have ratified the contract.")

In fact, despite submitting six additional filings in this litigation before June 9, 2015, Tracey Gragg did not raise the issue that her contract with ITT Tech was invalid.  Tracey Gragg's continuous litigation of her claims without raising the issue of her competence reveals her clear intention to ratify the Enrollment Agreement.  *See Bunn*, 33 S.E. at 707 (If a party does not raise the issue of validity in "the first plea filed to the suit upon the contract," such conduct is "sufficient to show that [the party] had determined to abide by the contract".).  Moreover, even if Tracey Gragg was not aware that she had the authority to disaffirm the contract prior to ITT Tech filing a motion to dismiss/compel arbitration, such a lack of knowledge does not negate ratification.  *My Pie*, 687 F.2d at 935 (quoting *Shepherd v. Shepherd*, 97 N.E.2d 273, 279 (Ill. 1951)) ("[I]t is not necessary to a binding ratification that the party sought to be

charged knew at the time of the act that he had the legal right to avoid the contract.").

The Graggs' allegations supporting their claims also clearly show that Tracey Gragg ratified the Enrollment Agreement.  In the present complaint, the Graggs allege that they are "otherwise qualified" individuals with disabilities, which is a requirement for a claim under the ADA.  *See* Amended Complaint (d/e 27) at 1.  An "otherwise qualified" individual means an individual that is "otherwise qualified for the position sought."  29 U.S.C.A. § 794.  Because the "position sought" is student, that means that the Graggs allege that they are individuals that "meet[] the academic and technical standards requisite to admission."  *Knapp v. Nw. Univ.*, 101 F.3d 473, 482 (7th Cir. 1996).  "Technical standards" is defined as "all nonacademic admissions criteria that are essential to participation in the program in question."  *Id.*; 45 C.F.R. § Pt. 84, App. A.  Like paying tuition, signing a valid contract for enrollment is essential to enroll into ITT Tech.  *See* Exh. 1 to Reply (d/e 44-1); *see also Watson v. St. Luke Acad.*, 2005 WL 281227 at 3, (N.D.Ill 2005) (granting motion to dismiss on grounds that student was not

"otherwise qualified" because plaintiff failed to agree to enrollment requirements of "pay[ing] tuition, provid[ing] emergency contact information and furnish[ing] proof of regular church attendance"). By alleging that Tracey Gragg is "otherwise qualified", the Graggs conceded that she has a valid enrollment agreement with ITT Tech. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("[A] party is bound by what it states in its pleadings.").

By June 9, 2015, when the Graggs finally raised the issue of whether the contract was validly formed, Tracey Gragg had already ratified the voidable contract. Because Tracey Gragg effectively ratified the Enrollment Agreement, the contract is valid.  Therefore, Tracey Gragg is bound by Paragraph 19 to pursue her claims through arbitration.

## IV.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that ITT Tech's Motion to Dismiss or in the Alternative to Compel Arbitration (d/e 34) is GRANTED.  Plaintiffs' Amended Complaint (d/e 27) is DISMISSED WITHOUT PREJUDICE under Fed.R.Civ.Pro

12(b)(3).  Plaintiffs must file for arbitration to pursue their claims.

The case is CLOSED.

ENTER: February 29, 2016.

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE